IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 20, 2005

## STATE OF TENNESSEE v. JAMES WESLEY MARTENS

**Direct Appeal from the Circuit Court for Humphreys County**
**No. 10545     George C. Sexton, Judge**

---

**No. M2005-00688-CCA-R3-CD - Filed February 17, 2006**

---

The defendant, James Wesley Martens, was convicted by a Humphreys County jury of aggravated robbery and evading arrest. The defendant was sentenced to concurrent sentences of fourteen years and three years, respectively, in the Tennessee Department of Correction as a Range II multiple offender. On appeal, the defendant challenges the trial court's denial of his request for a continuance and the sufficiency of the convicting evidence. Following our review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. McLin, J., delivered the opinion of the court, in which David H. Welles and John Everett Williams, JJ., joined.

William B. Lockert, III, 23rd District Public Defender and Haylee A. Bradley, Assistant District Public Defender, Ashland City, Tennessee, for the appellant, James Wesley Martens.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Dan M. Alsobrooks, District Attorney General; and Lisa Donegan, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**BACKGROUND**

This case arises out of the robbery of the Deerfield Inn in New Johnsonville, Tennessee. Julia Boyd testified that as the manager of the Deerfield Inn, she lived in an apartment adjacent to the lobby of the Inn. According to Ms. Boyd, the evening of July 21, 2003, around 9:30, she was in her room when she heard the bell on the front door. She said, "I'll be right there," but nobody answered. She walked around the corner and saw a man with a dark toboggan pulled down over his nose holding a gun. Ms. Boyd recalled that the man "held [the gun] with his right hand sort of

sideways over the counter and [she] could see that it was a chrome gun." The man told her not to push the buzzer or he would kill her. He told her to open the drawer and give him all the money. Ms. Boyd recalled that she gave him $175.00 in twenties, tens, fives, and several ones. Ms. Boyd further testified that as the man started to leave he told her to lay on the floor. When she explained that she could not because of a disability, he told her he would come back and kill her if she called the police. After the robber left, Ms. Boyd called to another man outside the lobby and told him she had been robbed and to get a description of the car the robber left in. Ms. Boyd testified that she remained calm as she called the police and gave them a description of the robber and his vehicle.

Ms. Boyd described the robber as tall, very thin, and wearing a light blue denim shirt and blue jeans. She recalled that the toboggan was black or dark navy and did not have any eye holes. According to Ms. Boyd, the toboggan covered the robber's face, down below the nose, but she could see a heavy mustache. Ms. Boyd explained that although the robber had a gun, she was not afraid of being killed because she "knew [she] was going to do what he said." Ms. Boyd recalled that she selected the defendant as the robber out of a photographic lineup and that she recognized him by his clothing, mustache, and "sharp, pointy chin." At trial, she identified the defendant as the person who robbed her. On cross-examination, Ms. Boyd was questioned about whether she initially told the police the gun had a fancy brown or cream handle, to which she replied she probably did. Also, on cross-examination, Ms. Boyd denied that she ever told anyone the robber was driving a white car because she could tell the car was a dark color.

Kenneth Daughtery was the next to testify. Mr. Daughtery testified that he was staying at the Deerfield Inn the evening of July 21, 2003. He recalled that around 9:30 that evening he was sitting in his truck talking to his wife on his cell phone. While sitting in his truck, Mr. Daughtery observed a person sitting in a Toyota or a small car next to him. Mr. Daughtery saw that the individual was wearing a toboggan and thought it was odd that a person would wear a toboggan in July. Mr. Daughtery explained that after he finished his call, he went into his room to get change for a soda and headed to the drink machine by the front office. According to Mr. Daughtery, the person wearing the toboggan was standing outside the front door of the Inn's office. Mr. Daughtery walked to the concession room to get his soda and when he came out, the manager, Ms. Boyd, told him she had just been robbed. Mr. Daughtery described the robber as about six feet tall, slim, with long hair and angular features, driving a silver gray Toyota or old, square model car. He picked the defendant out of a photographic lineup, and also identified the defendant as the robber at trial. On cross-examination, Mr. Daughtery admitted that he had a prior conviction for second-degree murder.

Officer Wesley Hagler of the Waverly Police Department testified at the trial. Officer Hagler testified that he received an armed robbery call over the radio dispatch around 9:35 the evening of July 21, 2003. He was told to be on the lookout for "[a] small silver gray older model [car], boxy, kind of square [driven by an] [o]lder gentleman with long hair, had on a light colored shirt, light colored blue jeans, some type of dark toboggan type thing on his head." The car was reportedly heading eastbound on Highway 70 out of New Johnsonville. Officer Hagler testified that he and Captain Perry Rice took different positions in separate police vehicles to watch for the suspect. Approximately one minute after Officer Hagler took his position, a vehicle passed that matched both

the vehicle and driver descriptions. After pulling out behind the car, Officer Hagler testified that he noticed the driver remove a dark toboggan off his head. According to Officer Hagler, Captain Rice eventually fell in behind him, and both officers followed the vehicle for approximately 500 feet before the driver pulled over. Officer Hagler identified the defendant as the driver of the car.

Officer Hagler testified that after the defendant stopped his vehicle, he complied with the officers' request to raise his hands, but he did not turn off the car's ignition. Instead, the defendant revved the engine and took off. As a result, the officers resumed their pursuit of the defendant. Officer Hagler explained that eventually the defendant stopped and abandoned his vehicle. Inside the defendant's abandoned vehicle, police officers found a black toboggan and registration information showing the defendant as the owner of the vehicle. Captain Rice also testified about the facts relevant to the pursuit of the defendant. His testimony was similar to Officer Hagler's testimony.

Larry Leissure, an officer with the Waverly Police Department, testified that his involvement in the incident began after the vehicle pursuit had ended. Officer Leissure explained that he and another officer took the defendant into custody after being alerted that the defendant was trying to get back into his residence. Officer Leissure explained that Officer David Ross conducted a pat-down of the defendant and found a "wad of money." Officer Leissure testified that he took the money from Officer Ross and laid it in the passenger seat of his vehicle. Officer Leissure then photographed the money. Officer Leissure stated that the initial amount counted was $155.00. However, Officer Leissure testified that he discovered another twenty in the passenger seat of the officer's vehicle, making $175.00 the total amount recovered from the defendant. Officer Ross testified that he was responsible for transporting the defendant to jail, and he found a "wad of money" when he searched the defendant's pockets.

Brian Baker, an officer with the Humphreys County Sheriff's Department, testified that on July 22, 2003, he was investigating a complaint of eggs being thrown when he discovered a weapon, partially wrapped in a white shirt, on the side of the highway. The area where Officer Baker discovered the weapon was the same area where the vehicle pursuit of the defendant had occurred the previous evening.

Officer Todd Edgel with the New Johnsonville Police Department testified that he went to the Deerfield Inn upon receiving information from the dispatcher that there had been a robbery. Officer Edgel recalled that he met with Ms. Boyd and that she seemed "[n]ervous[,] [s]cared, kind of shaken up." Officer Edgel later showed Ms. Boyd and Mr. Daughtery a photographic lineup. Officer Edgel testified that the lineup did not show the individuals in front of any sort of height chart. According to Officer Edgel, Ms. Boyd did not hesitate in picking the defendant out of the lineup and after closer examination of the lower portion of the defendant's face, she explained, "that's definitely [him]." Officer Edgel also recalled that Mr. Daughtery readily identified the defendant. Officer Edgel further testified that Ms. Boyd identified the weapon recovered by Officer Baker as the weapon the defendant used during the robbery.

On cross-examination, defense counsel questioned Officer Edgel regarding the weapon being black with a little chrome, whereas Ms. Boyd's initial description was that the gun had a brown or cream handle. Defense counsel also questioned Officer Edgel about how the photographic lineup showed the individuals in front of a door hinge so that the viewer could tell almost everyone was shorter than the defendant. Officer Edgel was further questioned on cross-examination about whether the robber was initially reported as driving a small white car.

Shelia Martens, the defendant's wife, testified on the defendant's behalf. Mrs. Martens recalled that the morning of the robbery the defendant talked to a counselor and then went to the emergency room where he was given a prescription for Paxil that he was unable to get filled. According to Mrs. Martens, the defendant was real shaky and acting very strange, then just left the house. Mrs. Martens noted that she had just gotten her muscle relaxer prescription filled, but the bottle was less than half full, and she also noticed some anti-depressant pills were missing. She hypothesized that the defendant must have taken some of her pills because he acted in a way that the medicines sometimes affected her. Mrs. Martens testified that she visited the defendant in jail, and he told her, "I don't remember anything. . . . the first thing I remember is sirens." On cross-examination, the prosecutor questioned Mrs. Martens about whether her daughter had access to the prescriptions and had a drug problem in the past.

The jury convicted the defendant of aggravated robbery and evading arrest, and he was sentenced to an effective sentence of seventeen years. The defendant appealed.

## ANALYSIS

On appeal the defendant argues: (1) the trial court erred in not granting a continuance for him to obtain an independent mental evaluation; and (2) the evidence was insufficient to sustain his conviction for aggravated robbery.

### Continuance

The defendant argues that the trial court erred in not granting him a continuance in order to obtain an independent mental evaluation. To begin, we note that the defendant has waived this issue. The defendant's entire argument is as follows:

> Before trial the Court denied a defense motion to continue in order to get an independent mental evaluation. (T.E.S. p. 14) The defense asked for the continuance to get a more thorough evaluation on diminished capacity based on the medications the Defendant had taken the night the robbery took place. (T.E.S. pg. 5) Denial of that motion prejudiced the defense's case because the evaluation could have possibly assisted a great deal with the diminished capacity defense.

-4-

"Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b); *see also State v. Schaller*, 975 S.W.2d 313, 318 (Tenn. Crim. App. 1997).

Even if not waived, however, the defendant's argument is without merit. The granting or denial of a continuance is a matter left to the sole discretion of the trial judge, whose decision will not be disturbed absent a showing of abuse of discretion to the defendant's prejudice. *State v. Cazes*, 875 S.W.2d 253, 261 (Tenn. 1994); *State v. Russell*, 10 S.W.3d 270, 275 (Tenn. Crim. App. 1999). In order to establish that the denial of the continuance was an abuse of discretion, we must be convinced that the defendant "did not have a fair trial and that a different result would or might reasonably have been reached had there been a different disposition of the application for a continuance." *Baxter v. State*, 503 S.W.2d 226, 230 (Tenn. Crim. App. 1973); *see also State v. Goodman*, 643 S.W.2d 375, 378 (Tenn. Crim. App. 1982) ("The only test is whether the defendant has been deprived of his rights and an injustice done.").

In this case, the trial court conducted a hearing on the defendant's motion for a continuance and determined that it should be denied. At his motion for a new trial hearing, the defendant argued that a continuance should have been granted because the state-appointed mental experts only interviewed him for a few minutes and failed to address the possibility his mental capacity might have been affected by drugs he was taking the night of his crimes.[1] The trial court responded:

> The Court decided at the time the Defendant would not get a continuance to get an independent mental evaluation, he was evaluated by a competent evaluator, finding that there was no basis to support a defense of insanity or his ability to stand trial. . . . He's been in and out of the penitentiary. He knows how the system works. There's really no basis to get a mental evaluation to begin with, and certainly no basis to get a second independent mental evaluation. He's familiar with how the system works. It was just a ruse to attempt to continue his trial when there was no basis.

We have found nothing in the record to indicate the trial court abused its discretion in denying the defendant's motion for a continuance. Here, the defendant failed to offer any support for his request for a second evaluation. Instead, he only speculates as to what another mental evaluation might have revealed. Speculation is not enough to prove the trial court abused its discretion to the prejudice of the defendant. Accordingly, the defendant is not entitled to relief on this issue.

**Sufficiency**

The defendant also argues that the evidence was insufficient to convict him of aggravated robbery. Our review begins with the well-established rule that once a jury finds a defendant guilty,

---

[1] We were not provided with the transcript of the motion for a continuance, so we gleaned what was argued at that hearing from the transcript of the motion for a new trial.

his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to this court why the evidence will not support the jury's verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003).

In contrast, the jury's verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. *Carruthers*, 35 S.W.3d at 558; *Tuggle*, 639 S.W.2d at 914. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. *Id.*

Aggravated robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear[,]" when "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" Tenn. Code Ann. §§ 39-13-401,-402.

To begin, we note that as part of his sufficiency argument, the defendant challenges the validity of the photographic lineup out of which the witnesses identified him. First, the defendant failed to raise this issue in a pretrial motion or make a contemporaneous objection at trial; therefore the issue is waived. *See* Tenn. R. Crim. P. 12(b)(3); Tenn. R. App. P. 36(a); *see also State v. Thompson*, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000). Second, even if not waived, an examination of the lineup does not reveal anything improper. The photographs show men who all had facial hair, at least one other man had on a light blue shirt, and there was no designated height chart behind the men. Furthermore, defense counsel thoroughly cross-examined both Ms. Boyd and Mr. Daughtery about their photographic identification of the defendant, and the jury determined that both witnesses were able to make a credible identification.

After considering the evidence in the light most favorable to the state, we conclude that a rational jury could have found the defendant guilty of aggravated robbery. The evidence at trial established that both Ms. Boyd and Mr. Daughtery identified the defendant as the robber out of a photographic lineup and at trial. Mr. Daughtery gave the police a description of the vehicle the robber left in as well as his direction of travel. Officers spotted the defendant in the described car traveling on the described road within the appropriate time frame. An officer saw the defendant take a dark toboggan off his head while the officer was traveling behind the defendant, and the toboggan was found in the defendant's car. The defendant was apprehended with the exact amount of money

Ms. Boyd testified the robber took from her. Ms. Boyd identified the gun Officer Baker found as the gun used during the robbery. Any inconsistencies were evaluated and assessed by the jury as the trier of fact. We will not second-guess the jury's verdict. Accordingly, we conclude the evidence supports all the necessary elements for the defendant's aggravated robbery conviction. Thus, the defendant is not entitled to relief on this issue.

## CONCLUSION

After our review of the record and the parties' briefs, we affirm the judgment of the trial court.

_____
J.C. McLIN, JUDGE